FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2010 MAY 26  PM 12: 04

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 10-081 |
| v. | * | SECTION: K (3) |
| JOSEPH BASEL | * | VIOLATION: 18 U.S.C. § 1036(a) |
| STAN DAI | | 18 U.S.C. § 2 |
| ROBERT FLANAGAN | * | |
| JAMES O'KEEFE | | |
| * * * | | |

## FACTUAL BASIS

The defendants, **JOSEPH BASEL**, **STAN DAI**, **ROBERT FLANAGAN**, and **JAMES O'KEEFE** (collectively, "the defendants"), have agreed to plead guilty as charged to the one-count Bill of Information charging them with misdemeanor entry, or causing the entry, by false pretenses to real property of the United States, in violation of Title 18, United States Code, Sections 1036(a)(1), (b)(2), and 2. In pleading guilty, the defendants admit the following facts as set forth below.

Should this matter have gone to trial, the Government would have proved beyond a reasonable doubt, through the introduction of competent testimony and admissible evidence, the following facts to support the allegations charged by the United States Attorney in the Bill of

___Fee _____
___Process_____
_x_ Dktd _____
___CtRmDep_____
___Doc. No._____

Information:

The Hale Boggs Federal Building, located at 500 Poydras Street, New Orleans, Louisiana 70130, is owned and operated by the United States of America and managed by the United States General Services Administration (hereinafter "GSA"). The Hale Boggs Federal Building houses the offices of numerous federal agencies and federal officials, including the New Orleans office of United States Senator Mary Landrieu. As such, the office constitutes real property belonging to the United States.

In addition to Title 18, United States Code, Section 1036, there are additional rules and regulations governing conduct on federal property. These rules and regulations are codified in various portions of the United States Code, Title 41 of the Code of Federal Regulations, and in the Local Rules. These types of laws, regulations and rules are meant to insure the safety and security of the occupants, visitors, proceedings and buildings of the Federal government.

The General Services Administration ("GSA"), the United States Marshals Service, the Court Security Officers, the Federal Protective Service, and the Federal Bureau of Investigation, among others, are tasked, individually and collectively, with maintaining the highest level of security for federal buildings in order to prevent incidents that could jeopardize the safety and security of people with business in the Federal Complex. As such, conduct in all offices contained in the Federal Complex is governed by all of the laws, regulations, and rules referenced above.

On or about January 20, 2010, **JOSEPH BASEL** ("BASEL"), **STAN DAI** ("DAI"), **ROBERT FLANAGAN** ("FLANAGAN"), and **JAMES O'KEEFE** ("O'KEEFE"), met for the purpose of discussing a variety of topics, including possible scenarios to engage the staff of

Senator Landrieu and record the interactions using audio and visual equipment.

On or about the afternoon of January 23, 2010, **FLANAGAN** received a phone call from **O'KEEFE**, during which **O'KEEFE** invited **FLANAGAN** to participate in their activities concerning Senator Landrieu's office. **O'KEEFE** further invited **FLANAGAN** to meet the next day to finalize the details and coordinate with the other participants.

On or about Sunday, January 24, 2010, **BASEL, DAI, FLANAGAN,** and **O'KEEFE,** met to practice how they would interact with Senator Landrieu's staff and record the interaction with the Senator's staff the next day. During this meeting, the defendants discussed what they would wear—disguises to make them look like telephone repairmen—and what equipment they would use to record the interaction.

At approximately 10:00 a.m. on or about January 25, 2010, **BASEL, FLANAGAN,** and **O'KEEFE** met at an office located near the Federal Complex to finalize their plan, check the recording devices, and mount a small video camera in one of the disguises. During the meeting **O'KEEFE** explained to **BASEL** and **FLANAGAN** how the recording equipment worked and directed them how to position themselves inside of the office.

On or about January 25, 2010, at approximately 11:00 a.m., **BASEL, FLANAGAN,** and **O'KEEFE** entered the Hale Boggs Federal Building and passed through the security screening. **DAI** remained outside of the building to provide support for **BASEL, FLANAGAN,** and **O'KEEFE. BASEL** and **FLANAGAN** each dressed in blue denim pants, a blue work shirt, a light fluorescent green vest, a tool belt, and carried a white, construction-style hard hat. At least one hard hat contained a video recording device, with a small camera installed on the brim of the hat. **O'KEEFE** instructed **BASEL** and **FLANAGAN** to wait for him to enter the Senate office

first and to come in shortly thereafter. **O'KEEFE** then entered the New Orleans office of United States Senator Mary Landrieu. Shortly thereafter, **BASEL** and **FLANAGAN** entered the office.

Upon entering the Senate office, **BASEL** and **FLANAGAN** stated to members of Senator Landrieu's staff that they were repair technicians from the telephone company and were there to follow up on reports of problems with the telephone system. **BASEL** and **FLANAGAN** were each wearing a white, hard construction hat, a tool belt, a fluorescent vest, and denim pants and tops. When **BASEL** and **FLANAGAN** entered the office, **O'KEEFE** positioned a digital recording device made to look like a cellular telephone in his hand so as to record **BASEL** and **FLANAGAN**.

One of Senator Landrieu's staff members (WITNESS 1) told **BASEL** and **FLANAGAN** that she did not report any phone problems and that the office was not experiencing any issues with the phone system. WITNESS 1 then turned her attention to **O'KEEFE** and asked if she could help him. **O'KEEFE** responded that he was waiting for a friend, who had asked him to meet her in Senator Landrieu's office.

**BASEL** asked WITNESS 1 for permission to test the phone system, and WITNESS 1 directed him to a phone sitting on a desk reserved for a staff member for Senator Landrieu. **BASEL** then walked behind the desk, lifted the phone handset from the cradle, questioned whether there was a dial tone, and handled the receiver. **BASEL** and **FLANAGAN** also pretended to call the phone with cellular phones in their possession. They told WITNESS 1 that they could not get through. **O'KEEFE** recorded these interactions.

**BASEL** also stated that he and **FLANAGAN** needed to perform repair work on the main telephone system and asked to be taken to the "central box." WITNESS 1 stated that she did not

know anything about the inner workings of the office phone system and told **BASEL** and **FLANAGAN** that they would have to speak with a representative from GSA about it.

While in the office, in keeping with the pretextual story, **O'KEEFE** represented to **BASEL** and **FLANAGAN** that he had recently attempted to place a call to the office of Senator Landrieu but that the call "wouldn't go through."

Subsequently, WITNESS 1 requested that **BASEL** and **FLANAGAN** accompany WITNESS 1 to the main GSA office. Both men accompanied WITNESS 1 to the GSA office.

In the hallway outside the GSA office, WITNESS 1, with **BASEL** and **FLANAGAN** following her, encountered a manager with GSA. WITNESS 1 explained to the GSA employee that **BASEL** and **FLANAGAN** had come to Senator Landrieu's office to repair the phone system, which was not in need of repair.

**BASEL** and **FLANAGAN** again said they were telephone repairmen, and **BASEL** asked the GSA employee to take them to the phone system's "central box" so that they could perform repair work.

The GSA employee asked **BASEL** and **FLANAGAN** if they had a work order or credentials. **BASEL** and **FLANAGAN** responded that the work order and their credentials were in their truck, which was parked just outside of the building. The GSA employee then informed **BASEL** and **FLANAGAN** that he would escort them to their truck so that they could provide the work order to him and present their credentials to him.

While WITNESS 1 took **BASEL** and **FLANAGAN** to the GSA office, **O'KEEFE** remained in Senator Landrieu's office. He continued to record the office and the remaining staff members. **O'KEEFE** stayed in the office for approximately six more minutes before pretending

to take a phone call from "Sam" and leaving the office.

Investigators with the Federal Bureau of Investigation and the United States Marshal's Office would testify that, in individual interviews on or about January 25, 2010, **BASEL** and **FLANAGAN** admitted that they were not telephone repairmen and that they entered the office of Senator Landrieu under false pretenses. **O'KEEFE** further admitted that he planned the activity and recorded **BASEL** and **FLANAGAN** inside of Senator Landrieu's office. Investigators would further testify that **BASEL, DAI, FLANAGAN**, and **O'KEEFE** each admitted in individual interviews that they collectively brain stormed scenarios to engage the Senator's staff in conversation, which they would record. **BASEL, DAI, FLANAGAN**, and **O'KEEFE** admitted that they worked together in the planning, coordination, and preparation of the activities.

In this case, further investigation did not uncover evidence that the defendants intended to commit any felony after the entry by false pretenses despite their initial statements to the staff of the Senatorial office and GSA requesting access to the central phone system. Instead, the Government's evidence would show that the defendants misrepresented themselves and their purpose for gaining access to the central phone system to orchestrate a conversation about phone calls to the Senator's staff and capture the conversation on video, not to actually tamper with the phone system, or to commit any other felony.

Both the Government and the defendants, **JOSEPH BASEL, STAN DAI, ROBERT FLANAGAN**, and **JAMES O'KEEFE**, do hereby stipulate and agree that the above facts are true and that they set forth a sufficient factual basis for the crime to which the defendants are pleading guilty.


**APPROVED AND ACCEPTED:**

_____     5/26/10
JORDAN GINSBERG                       Date
Assistant United States Attorney
Illinois Bar Roll No. 6282956

_____     5/24/10
ROBERT FLANAGAN                       Date
Defendant

_____     5/26/10
JOHN GARRISON JORDAN, ESQ.            Date
Attorney for the Defendant
LA Bar Roll No. 30340

7